COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

§

§

§

§

§

§

EMPOWER TEXANS, INC. &
MICHAEL QUINN SULLIVAN,

Appellants,

v.

TEXAS ETHICS COMMISSION,

Appellee.

No. 08-20-00153-CV

Appeal from the

345th Court District Court

of Travis County, Texas[1]

(TC# D-1-GN-15-004455)

## O P I N I O N

This is an appeal from a final judgment on cross motions for summary judgment dismissing

a declaratory judgment counterclaim filed by Appellants Empower Texans, Inc. (ETI) and Michael

Quinn Sullivan (Sullivan) (together Appellants) against Appellee the Texas Ethics Commission

(the Commission). Appellants sought declarations that sections 571.061, .172, and .173 of the

Texas Government Code violate the Texas Constitution's Separation of Powers Clause because

they delegate executive powers to the Commission, a state agency that Appellants contend is a

legislative body. The trial court granted the Commission's motion and denied Appellants' motion,

---

[1] The Texas Supreme Court transferred this case from the Third District Court of Appeals in Austin pursuant to its authority to equalize the courts of appeals' dockets. *See* TEX.GOV'T CODE ANN. §73.001. Under these circumstances, in accordance with the principles of stare decisis, and to the extent the precedent from our court conflicts, we are required to decide this case consistent with the precedent of the transferor court. TEX. R. APP. P.41.3.

holding the delegation of enforcement powers to the Commission did not violate the constitution because the Commission is an executive body with legislative powers constitutionally granted. We affirm the trial court's judgment.

## PROCEDURAL BACKGROUND

**I.      ETI and Sullivan are Engaged in Activity That Attempts to Influence Elections and Elected Officials.**

Appellants are well known conservative activists operating within the Texas political arena.[2] ETI is a nonprofit corporation doing business as Texans for Fiscal Responsibility (TFR). According to its formation documents filed with the Texas Secretary of State in 2006, ETI was formed "exclusively for educational purposes to benefit the social welfare." The formation documents state that ETI's mission is to "work for a more prosperous future for all Texans by informing the public regarding government spending and tax policy and empowering citizens to take action on these issues." The formation documents expressly prohibit ETI from engaging in "any activities not permitted to be conducted or carried on by an organization recognized under Section 501(c)(4) of the Internal Revenue Code and its regulations."[3]

Since ETI's formation Tim Dunn[4] has served as ETI's Chairman and Director, and Sullivan has served as ETI's President. According to Appellants, following the 2007 Texas Legislative Session, Sullivan formed Empower Texans Political Action Committee (the PAC). Dunn appointed Sullivan to serve as the PAC's campaign treasurer on July 12, 2007. On January 16,

---

[2] *See* Nate Blakeslee, *Primary Targets*, Texas Monthly, January 2013, available at https://www.texasmonthly.com /news-politics/primary-targets/ (last visited Sept. 17, 2022). Appellants attached this article to their Answer and Counterclaim filed in the trial court.

[3] The Internal Revenue Service expressly excludes from the definition of "promotion of social welfare" "the direct or indirect participation or intervention in political campaigns on behalf of or in opposition to any candidate for political office." *See* 26 U.S.C. § 501(c)(4)(A); 26 C.F.R. § 1.501(c)(4)-1(a)(2)(ii).

[4] According to the *Texas Monthly* article, Tim Dunn is "an independent oil executive from Midland." *See supra* n.2.

2012, the PAC reported to the Commission it made no political expenditures between July 1, 2011 and December 31, 2011 and that it maintained $4,283.28 in political contributions.

On January 24, 2012, in a response to a public information request seeking information about whether Sullivan had registered as a lobbyist in 2010 or 2011, the Commission confirmed that Sullivan had not. Two days later, on January 26, 2012, in response to a different public information request seeking information about whether ETI had "filed a report of direct campaign expenditures as described by Section 254.261(a), Election Code,"[5] the Commission confirmed that ETI had not.

## II. The Ethics Complaints Against Sullivan and ETI

### A. Sworn complaints alleging Appellants violated ethics laws in 2010 and 2011 are filed with the Commission.

For the express purpose of regulating elections and eliminating opportunities for undue influence over elections and governmental actions, the Commission receives and investigates sworn complaints alleging violations of certain state ethics laws. *See* TEX.GOV'T CODE ANN. §571.001. On April 3, 2012, the Commission received four sworn ethics complaints[6] alleging both Sullivan and ETI violated state ethics laws in 2010 and 2011. Two of the four complaints alleged Sullivan in 2010 and 2011 was paid by ETI to lobby members of the legislature and their staff and did so in those years without registering as a lobbyist (the lobbyist complaints).[7] The two other

---

[5] *See* TEX. ELEC.CODE ANN. §254.261(a) (*eff.* June 17, 2011, H.B. 2359, 82nd Leg., R.S., Ch. 1009, §5).("A person not acting in concert with another person who makes one or more direct campaign expenditures in an election from the person's own property shall comply with this chapter as if the person were the campaign treasurer of a general-purpose committee that does not file monthly reports under Section 254.155.")

[6] Before the Commission can initiate administrative proceedings, a written and sworn complaint that meets statutorily defined requirements must be filed with the Commission. TEX.GOV'T CODE ANN §571.122. If the Commission receives a complaint that complies with the statutory prerequisites, the Commission must provide written notice of that fact to both the complainant and the respondent not later than the fifth business day after the date a complaint is filed with the Commission. *Id.* § 571.123(b).

[7] *See* TEX.GOV'T CODE ANN. §305.003 (requiring certain persons to register with the Commission as a lobbyist).

complaints alleged ETI violated campaign finance laws (the campaign-finance complaints) in 2010 and 2011 under two alternate theories.

Under the first theory, the campaign-finance complaints alleged that if ETI was "not acting in concert with another," ETI failed to file with the Commission a report disclosing its direct campaign expenditures totaling more than $100 no later than January 17, 2012.[8] Under the second theory, the campaign-finance complaints alleged that "if [ETI] was acting in concert with another," ETI had accepted political contributions and made political expenditures during 2010 and 2011 but did not have on file with the Commission a campaign treasurer appointment in each of those years.[9]

After determining all four complaints complied with statutory prerequisites invoking the Commission's jurisdiction, the Commission made several attempts between 2012 and 2013 through its preliminary review process to obtain from Sullivan and ETI information relevant to the complaints.[10] However, Sullivan, individually, and as president of ETI, refused to cooperate with

---

[8] *See* TEX.ELEC.CODE ANN. §254.261(a) (requiring reporting by certain persons making direct campaign expenditures exceeding $100).

[9] *See* TEX.ELEC.CODE ANN. §252.001 (requiring each candidate and each political committee to appoint a campaign treasurer).

[10] The Commission is required to "promptly" conduct a preliminary review of a compliant complaint to determine whether the Commission's jurisdiction is invoked. TEX.GOV'T CODE ANN. §571.124(a), (c). If jurisdiction is invoked, a written notice is required to be sent to the Respondent. *Id.* §571.123(b). The notice must include information necessary to respond to the complaint. *Id.* § 571.124(e). The written notice must also include "a statement inviting the respondent to provide to the commission any information relevant to the complaint[.]" *Id.* § 571.124(e)(6). Within the written response, a respondent is required to either: (1) acknowledge the violation, (2) deny the allegation, or (3) "agree to enter into an assurance of voluntary compliance or other agreed order, which may include an agreement to immediately cease and desist." *Id.* § 571.1242(d)(3). During its preliminary review, the Commission staff "may submit to the complainant or respondent written questions reasonably intended to lead to the discovery of matters relevant to the investigation." *Id.* § 571.1242(f). The relevant inquiry at the preliminary review hearing is "whether there is credible evidence that provides cause for the commission to conclude that a violation within the jurisdiction of the commission has occurred." *Id.* § 571.125(d)(3). Following a preliminary review hearing, the Commission may determine that: (1) "credible evidence" exists establishing a violation has occurred; (2) "credible evidence" exists establishing a violation has not occurred; or (3) there is "insufficient credible evidence" establishing whether a violation has or has not occurred. *Id.* §571.126. If the Commission makes the third determination, *i.e.*, that there is insufficient evidence establishing a violation has or has not occurred, the Commission may dismiss the complaint, or it may "promptly conduct" a formal hearing. *Id.* §571.126(d).

4

the Commission's requests for information.

Meanwhile, on May 21, 2012, Sullivan on behalf of ETI filed with the Commission pursuant to Section 254.261 of the Election Code, a "first filed" "General-Purpose Committee Campaign Finance Report" disclosing that ETI made over $241,000 in political expenditures between April 30, 2012 and May 19, 2012 promoting or opposing certain political candidates shortly before a primary election was scheduled to occur on May 29, 2012. In the section designating the name and address of the campaign treasurer, Sullivan wrote "N/A."

On January 28, 2014, after it was unable to reach an informal resolution, the Commission served notice of its intent to proceed to a formal hearing on all four complaints.[11] In anticipation of the formal hearing which was scheduled to begin on April 3, 2014, the Commission issued two subpoenas on February 13, 2014.[12] Each subpoena pertained to all four ethics complaints. One subpoena was directed to Sullivan and the other was directed to ETI. The subpoenas directed Appellants to produce documents requested therein by March 6, 2014.

---

[11] If the complaint is not resolved during the preliminary review stage, the final step is the formal hearing. *See* TEX.GOV'T CODE ANN. §§571.129-.132. During the formal hearing, "the commission shall determine by a preponderance of the evidence whether a violation within the jurisdiction of the commission has occurred." *Id.* §571.129.

[12] In connection with a formal hearing, the Commission "may subpoena and examine witnesses and documents that directly relate to a sworn complaint," TEX.GOV'T CODE ANN. §571.137(a), provided that six of the eight commissioners make a written request that the subpoena be served, *id.* §571.137(b). The Commission's subpoena power is subject to a respondent's "right to quash . . . as provided by law." *Id.* §571.137(d). Counsel for respondent is also allowed to subpoena witnesses in connection with the formal hearing. *Id.* §571.130(f).

**B.      Appellants file suit against the Commission in federal and state courts.**

Rather than comply with the Commission's subpoenas or file a motion to quash in the administrative proceeding, on February 26, 2014, Appellants filed suit in a federal district court seeking to enjoin the Commission and its interim director from enforcing its subpoenas.[13] Appellants alleged, among other things, they were being selectively prosecuted, being denied due process, and the subpoenas violated their rights under the First Amendment.

On March 20, 2014, a hearing was held on Appellants' motion for temporary injunction in which the federal district judge expressed concern about the breadth of the Commission's subpoenas, describing them as "absurd" and stating he knew of "no courtroom in the land [in which] those subpoenas would be approved." However, in its order eventually dismissing the federal lawsuit on abstention[14] grounds,[15] the district court acknowledged the existence of a pending state administrative proceeding before the Commission, as well as several procedural mechanisms, including the ability to move to quash the subpoenas and seek appellate review of an adverse final determination, that Appellants could invoke in state courts to protect their rights and interests. The order of dismissal was signed on April 25, 2014.

Meanwhile, the Commission withdrew both of its original subpoenas and issued two

---

[13] *See Empower Texans, Inc. v. Texas Ethics Comm'n*, No. A-14-CA-172-SS, 2014 WL 1666389 (W.D. Tex. Apr. 25, 2014).

[14] *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (explaining the "longstanding public policy against federal court interference with state court proceedings"); *see also Wightman v. Texas Supreme Court*, 84 F.3d 188,189 (5th Cir. 1996) ("In *Younger*, the Supreme Court instructed federal courts that the principles of equity, comity, and federalism in certain circumstances counsel abstention in deference to ongoing state proceedings.") (internal quotation marks omitted).

[15] Although the Commission argued Appellants' claims brought against the Commission itself should be dismissed because they were barred by Eleventh-Amendment sovereign immunity, the federal district court "decline[d] to simply take the [Commission's] word" that the Commission was in fact an arm of the state. *See Empower Texans*, 2014 WL 1666389, at *2 (declining to dismiss claims against Commission on sovereign immunity grounds because Commission failed to perform six-factor analysis examining the entity's powers and characteristics to determine whether it was really an arm of the state).

6

amended subpoenas on April 7, 2014 which were served on Appellants on April 8, 2014. The amended subpoenas narrowed the scope of the original requests[16] and identified 19 specific categories of documents the Commission requested produced, as opposed to only a few broad categories identified in the original subpoenas. In addition, the amended subpoenas contained definitions that the original subpoenas lacked.

Appellants nevertheless objected to the amended subpoenas in a lengthy motion to quash filed with the Commission on April 21, 2014. The objections were based on various grounds, but primarily complained that the requests were overly broad, sought information that was irrelevant, confidential and privileged, were submitted for the "improper purpose of harassment and/or annoyance," and violated Sullivan's rights under the First and Fourteenth Amendments.

In addition to the motion to quash, on April 30, 2014, Appellants filed suit in state district court. Seizing on the federal district court's verbal disapproval of the original subpoenas, Appellants sought a state court order quashing the amended subpoenas, among other relief. This time, Appellants sued the Commission, its executive director, and all eight of its commissioners in both their individual and official capacities.[17]

On May 29, 2014, while the state lawsuit was pending, the Commission entered an order granting in part and denying in part Appellants' motion to quash filed in the administrative

---

[16] The amended subpoenas excepted from disclosure "any information that identifies any contributor or subscriber to Empower Texans who is not also: (1) Empower Texans, as defined herein; or (2) a member of the legislative branch; or (3) a member of the executive branch; or (4) . . . a political contributor whose contributions are subject to the reporting requirements of Title 15 of the Texas Election Code."

[17] *See Empower Texans, Inc.. v. Texas Ethics Comm'n*, No. D-1-GN-14-1252 (53rd Dist. Ct., Travis County, Tex. Apr. 30, 2014). This suit has produced at least two interlocutory appeals that were dismissed for want of jurisdiction. *See In re Empower Texans, Inc.*, No. 03-18-00220-CV, 2018 WL 1802515 (Tex.App.—Austin Apr. 17, 2018, no pet.) and *Empower Texans, Inc. v. State of Texas Ethics Comm'n*, No. 03-16-00019-CV, 2016 WL 6946810 (Tex.App.—Austin Nov. 22, 2016, no pet.). Although it appears the claims against the commissioners in their individual capacities were dismissed on October 20, 2017, it is unclear whether the claims raised against the Commission, executive director, and commissioners in their official capacities are still pending.

proceeding. The Commission's order further modified and/or clarified the amended subpoena requests and also imposed a June 13, 2014 deadline by when Appellants were required to respond to eleven of the nineteen requests, as modified. On June 13, 2014, Appellants submitted 76 documents to the Commission, but continued to object to the amended subpoenas as modified.

### C. The Commission sustains the lobbyist complaints against Sullivan.

On June 25, 2014, the eight-member Commission presided over a formal hearing on the two lobbyist complaints against Sullivan. At the hearing, the Commission heard testimony from nine witnesses, including Texas House Representative Jim Keffer and former Texas House Representative Vicki Truitt,[18] who each filed the original ethics complaints in 2012. Staff counsel also submitted "hundreds of pages of documents" obtained from offices of state legislators through public information requests as well as other public documents. The Commission's staff counsel argued these documents demonstrated Sullivan was paid to attempt to influence legislative policy decisions during the relevant time period. The documents included written communications sent from Sullivan to legislative offices via email as well as written communications left on House chamber desks instructing legislators how to vote on particular legislation.

Although Sullivan was provided an opportunity to testify at the hearing, he chose to respond to each question posed by staff counsel and commissioners by stating, "on the advice of counsel, I'm not going to testify today."[19] Sullivan's attorney told the Commission Sullivan was not asserting his right to remain silent under the Fifth Amendment, but instead was asserting his rights under the First, Fourth and Fourteenth Amendments and therefore would not be answering

---

[18] At the time she gave her testimony in 2014, Ms. Truitt was employed as a lobbyist, but at the time she filed the ethics complaint, she was a state representative.

[19] The Commission is prohibited from compelling the respondent to give evidence or testimony in violation of the right against self-incrimination under the Fifth Amendment to United States Constitution. TEX.GOV'T CODE ANN. §571.131(b).

8

any substantive questions. In his defense, Sullivan's attorney argued (1) there was insufficient evidence to prove Sullivan was required to register as a lobbyist; (2) chapter 305 of the Texas Government Code was unconstitutionally vague; and (3) Sullivan's conduct fell within the media exception to the registration requirement as a matter of law.[20]

In its final ruling issued on July 21, 2014 the Commission determined that Sullivan was in fact acting as a lobbyist in 2010 and 2011.[21] The Commission found that "part of [Sullivan's] regular employment involved making direct contact with members of the Texas Legislature and their staffs to influence the outcome of bills, nominations, and other matters that were subject to legislative action." As such, the Commission concluded that Sullivan was required to register as a lobbyist in 2010 and 2011 but failed to do so in violation of state law.

The Commission's written ruling also noted that although staff counsel had located "hundreds of pages of direct communication from Mr. Sullivan" in the files of Texas legislators, Sullivan had not produced any of them in his response to the Commission's subpoenas. The Commission wrote it was "left with the inescapable conclusion that Mr. Sullivan and Empower Texans have destroyed or lost thousands of emails sent to members of the Legislature during 2010 and 2011 despite having received written requests for such information in 2012." Sullivan was

---

[20] *See* TEX. GOV'T CODE ANN. § 305.004(1) (excepting from lobbyist registration "a person who owns, publishes, or is employed by a newspaper, any other regularly published periodical . . . or any other bona fide news medium that in the ordinary course of business disseminates news, letters to the editors, editorial or other comment, or paid advertisements that directly or indirectly oppose or promote legislation or administrative action, if the person does not engage in further or other activities that require registration under this chapter and does not represent another person in connection with influencing legislation or administrative action[.]")

[21] A motion by the Commission containing its final decision "must be adopted by a vote of at least six members if the final decision is that a violation has occurred or by five members if the final decision is that a violation has not occurred." TEX. GOV'T CODE ANN. §571.132(b). The motion must also state "in detail the commission's findings of fact, conclusions of law, and recommendation of criminal referral or imposition of a civil penalty, if any." *Id.* §571.132(a)(2). Following a formal hearing decision, the respondent may appeal an adverse determination by filing a petition in a district court in Travis County, or in the county where the respondent resides, not later than the 30th business day after the date respondent receives the Commission's decision. *Id.* §571.133(a), (b). The appeal is a trial *de novo*. *Id.* §571.133(d).

9

ordered to pay the maximum allowable civil penalty of $10,000 ($5,000 for each violation) to the State.[22] The two campaign-finance complaints filed against ETI were left pending before the Commission.

## III. The Commission Attempts to Enforce its Subpoenas Related to the Campaign-Finance Ethics Complaints.

Approximately one year later, on May 25, 2015, the Commission's staff counsel informed the Commission it could not proceed to a formal hearing on the two campaign-finance complaints brought against ETI because staff believed relevant documents were being withheld by Appellants in contravention of the subpoenas. Staff counsel filed a motion with the Commission seeking permission to ask the Attorney General to pursue a subpoena enforcement action against Appellants.[23] A hearing on staff counsel's motion was held before the Commission on June 11, 2015 in which Sullivan appeared with counsel who repeated objections previously made to the modified amended subpoenas.

### A. The Attorney General files enforcement suit in state court.

After the Commission voted to proceed with the subpoena enforcement action, on

---

[22] Sullivan ultimately appealed to the Austin Court of Appeals the Commission's final determination that he was liable to the Commission for the maximum civil penalty for failing to register as a lobbyist. *See Sullivan v. Texas Ethics Comm'n*, No. 03-21-00033-CV, 2022 WL 3972997, at *1, 8 (Tex.App.—Austin Aug. 31, 2022, no pet.). Sullivan argued in part that the Commission's authority to enforce the lobbyist registration statute violated the Texas Constitution's separation-of-powers provisions because the Commission is purportedly a legislative branch agency, which is the same challenge Appellants raise here. *Id*. at *6-8. In its recent opinion, the Austin court rejected that argument; however, the court also held the trial court erred when it imposed the maximum penalty of $10,000 for the lobbyist registration violations as a matter of law instead of submitting the issue to a jury as a material fact issue. *Id*. at *12-13 (relying on *Villarreal v. State*, No. 03-18-00752-CV, 2020 WL 6576158 (Tex.App.—Austin, Nov. 10,2020, no pet.)(mem.op.). The court of appeals remanded the case to the trial court for a jury trial on that sole issue. *Id*. We recognize *Sullivan* is binding precedent in this case, and we find that our opinion is consistent with the Austin Court of Appeals' holdings in *Sullivan*.

[23] With respect to the Commission's subpoena power in connection with both the preliminary review and formal hearings, if a person to whom a subpoena is directed refuses to comply with the requests contained therein, "the commission shall report that fact to a district court in Travis County" and "[t]he district court shall enforce the subpoena by attachment proceedings for contempt in the same manner as the court enforces a subpoena issued by the court." TEX.GOV'T CODE ANN. §571.137(c).

October 5, 2015, the Texas Attorney General brought suit in a Travis County district court on behalf of the Commission. [24] Appellants filed an original answer generally denying the Commission's allegations and asserted nine affirmative defenses including claims that the subpoenas were excessive, unduly burdensome, issued for an unauthorized purpose, and issued in violation of Appellants' constitutional rights guaranteed by the First and Fourteenth Amendments.

Appellants also raised four counterclaims. Among the original counterclaims raised by Appellants was a request for attorney's fees, expenses and costs to which Appellants claimed they were entitled under Chapter 105 of Texas Civil Practice and Remedies Code.[25] In support of their counterclaims, Appellants attached to their answer 35 exhibits, which amounted to approximately 1,413 pages documenting the administrative proceedings, the two prior lawsuits, hearing transcripts, and rulings by the Commission and presiding courts.

### B. The Attorney General nonsuits the enforcement action.

Approximately one year later, on September 6, 2016, the Attorney General filed a notice of nonsuit seeking dismissal with prejudice of the subpoena-enforcement action on the ground that the subpoenas were moot in "light of a judicial admission" made by Appellants in an appeal arising

---

[24] The Texas Administrative Procedure Act provides in relevant part:

  (a)  If a person fails to comply with a subpoena . . . issued under this chapter, the state agency issuing the subpoena . . ., acting through the attorney general . . . may bring suit to enforce the subpoena . . . in a district court in Travis County or in the county in which a hearing conducted by the agency may be held.

  (b)  A court that determines that good cause exists for the issuance of the subpoena . . . shall order compliance with the subpoena . . . . The court may hold in contempt a person who does not obey the order.

TEX.GOV'T CODE ANN. § 2001.201 (a)-(b).

[25] See TEX.CIV.PRAC.& REM.CODE ANN. §105.002 ("A party to a civil suit in a court of this state brought by or against a state agency in which the agency asserts a cause of action against the party . . . is entitled to recover . . . fees, expenses and reasonable attorney's fees incurred by the party in defending the agency's action if: (1) the court finds that the action is frivolous; and (2) the action is dismissed or judgment is awarded to the party.").

from the prior state district court case filed by Appellants.[26] In addition, on October 13, 2016, the Commission entered an order in the administrative proceeding dismissing the campaign-finance complaints on the ground that "there is insufficient credible evidence to prove the alleged violations occurred by the preponderance of the evidence."

The Attorney General subsequently sought dismissal of Appellants' counterclaims brought in the state court proceeding through a plea to the trial court's jurisdiction arguing in part that the dismissal of the administrative complaint mooted the counterclaims. However, the sole argument made to support its contention that Appellants' frivolous-enforcement counterclaim was barred by sovereign immunity was that Chapter 105's immunity waiver applied only to "executive" state agencies, which, according to the Attorney General, the Commission was not. *See* TEX.CIV.PRAC.& REM.CODE ANN. §105.001(3)(A) (defining "state agency" as "a board, commission, department, office, or other agency that . . . is in the *executive* branch of government" (emphasis added)). Rather, according to the Attorney General, the Commission was a *legislative* agency because it "was created pursuant to Article III of the Texas Constitution, which places it in the legislative branch of state government . . ." The Attorney General subsequently filed a "First Amended and Substituted Plea to the Jurisdiction" in which it repeated this sole argument to support the dismissal of Appellants' frivolous-enforcement counterclaim.

In their reply to the Attorney General's argument, Appellants argued that if "the Legislative

---

[26] The alleged admission by Appellants in the appellate proceeding read in relevant part: "Empower Texans did not request political contributions. Instead, it sent out five e-mails with a donate button, where the accompanying text read: 'Our work is made possible only through the generous support of friends like you. Please consider making a monthly or one time contribution of $5, $10, or $25 to fund independent expenditure activities that promote conservative leadership in the Lone Star State.' . . . The complaints are based entirely on that statement's appearing in five e-mails. . . even if the term triggered an obligation to file reports with the TEC, the total amount of all electronic donations during the timeframe the donate button could have been used is $375 from 11 separate donations. . . . It is not possible to determine whether the e-mails' donate button was ever used. The $375 is all electronic donations from every possible source. If it is assumed that the donate button was used for all electronic donations, the total amount still falls below the $500 threshold that the TEC asserts applies."

Branch has an agency with executive power . . . but is not an 'Executive Branch Agency'" then Section 571.061 of the Texas Government Code, which grants the Commission its enforcement powers, violates the separation of powers clause in Article II of the Texas Constitution. Appellants also simultaneously filed a First Amended Answer and Counterclaim in which they raised three amended counterclaims, labeled Counts 1, 2, and 4. Only counts 1 and 2 are relevant to this appeal. Under count 1, Appellants re-urged their Chapter 105 counterclaim. Under count 2, Appellants sought relief through the Uniform Declaratory Judgments Act (UDJA) seeking declarations that:

> [the Commission] is an executive branch agency as it relates to the statutory and rulemaking duties given by the Legislature in TEX. GOV'T CODE § 571.061 and § 571.062. In the alternative, [Appellants] seek this court declare that [the Commission] is a legislative branch agency and therefore prohibited by Articles I and II of the Texas Constitution from exercising any statutory authority as set out in TEX. GOV'T CODE § 571.061 and § 571.062. If the court finds that [the Commission] is a legislative agency, [Appellants] also request the court declare that all fees and fines assessed and collected by [the Commission] were done without authority, and that final decisions by [the Commission] are void and without authority and effect and that [the Commission] must cease and desist all enforcement activities.

In response to the amended counterclaims, the Attorney General filed a Second Amended and Substituted Plea to the Jurisdiction in which it maintained its position that the Commission was a legislative, not an executive, agency and as such Appellants counterclaim did not fall within the sovereign immunity waiver of Chapter 105. In response to the UDJA counterclaim, the Attorney General made two arguments. First, the Attorney General argued the UDJA did not waive sovereign immunity for claims "seeking construction or enforcement of a statute," which, according to the Attorney General, was the relief Appellants were seeking. Second, the Attorney General argued the UDJA counterclaim was rendered moot by the Commission's decision to dismiss the underlying ethics complaints.

On November 28, 2016, after a hearing, the trial court granted the plea to the jurisdiction

13

in a written order without specifying its reasons, and dismissed all three of Appellants' counterclaims. Only the Chapter 105 counterclaim was dismissed with prejudice. Appellants appealed only the trial court's ruling dismissing the UDJA counterclaim.

### C.     Appellants appeal dismissal of only their UDJA counterclaim.

On appeal, the Third Court of Appeals reversed the trial court's determination that it lacked subject matter jurisdiction over the UDJA counterclaim.[27] The appellate court determined the counterclaim was not mooted by the Commission's dismissal of the underlying ethics complaints and that Appellants therefore had standing. The appellate court also concluded the counterclaim was actually a challenge to the constitutionality of sections 571.061 and 571.062 of the Government Code, and as such, was not barred by sovereign immunity.[28] The UDJA counterclaim was remanded to the trial court, but the uncontested portions of the trial court's dismissal order, including the dismissal with prejudice of the Chapter 105 counterclaim, were affirmed. [29]

### D.     On remand, the trial court grants the Commission's motion for summary judgment dismissing Appellants' UDJA counterclaim.

On remand, Appellants filed their Second Amended Counterclaim, which once again sought relief under the UDJA to prevent the Commission from exercising its power to enforce the state's ethics laws, but this time they asked the trial court to:

> [d]eclare that the [Commission] is not an Executive Branch Agency. . . ; declare that the [Commission] is a Legislative Branch Agency and that any enforcement and administration of TEX. GOV'T CODE § 571.061 and § 571.062 is in violation of Articles I and II of the Texas Constitution; and, further, declare all orders and/or judgements of the [Commission] involving the assessment of fees and fines is without authority; and, finally, that the [Commission] must cease and desist all enforcement authority.

---

[27] *See Empower Texans, Inc. v. Texas Ethics Comm'n*, No. 03-16-00872-CV, 2018 WL 3678005, at *1 (Tex.App.—Austin Aug. 3, 2018, no pet.).

[28] *Id*. at *3-4.

[29] *Id*. at *5.

A year later, on December 17, 2019, the Attorney General filed a traditional motion for summary judgment. While maintaining its position that the Commission is a legislative agency, the Attorney General argued that the Commission's executive powers delegated to it by the Legislature in sections 571.061 and 571.062 did not violate the separation of powers clause because the Commission is a "unique body," and its enforcement powers "are expressly permitted" by the Constitution.

After a hearing, in a letter dated March 13, 2020 addressed to the parties, the trial court explained it was granting the Commission's motion for summary judgment and denying the Appellants' motion in part because it concluded the Commission "is an executive agency despite the assertions by the parties." The court stated that in "reviewing the legislative history, the Legislature did not intend to create a legislative agency with statutory executive powers. Instead, it created an executive agency with additional legislative powers constitutionally granted." The trial court subsequently signed a judgment to that effect on June 23, 2020.

## STANDARD OF REVIEW

We review a trial court's summary judgment rulings *de novo*. To prevail in a traditional motion for summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or must conclusively establish each element of an affirmative defense. TEX.R.CIV.P. 166a(c). When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, the reviewing court should review the evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *WTX Fund, LLC v. Brown*, 595 S.W.3d 285, 292 (Tex.App.—El Paso 2020, pet. denied); *see also Progressive Cty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 806 (Tex. 2009) (per curiam) (same)). "The reviewing court must affirm summary

15

judgment if any of the summary judgment grounds are meritorious." *Texas Workers' Comp. Comm'n v. Patient Advocs. of Texas*, 136 S.W.3d 643, 648 (Tex. 2004).

Appellants' issues also concern statutory construction. We review matters of statutory construction *de novo*. When reviewing the constitutionality of a statute, we begin with a presumption that the statute is constitutionally valid. *General Services Comm'n v. Little-Tex Insulation Co., Inc.* 39 S.W.3d 591, 598 (Tex. 2001). We are required to interpret legislative enactments in such a manner that avoids constitutional infirmities, when possible. *Id.* Finally, the burden of establishing the unconstitutionality of a particular statute is on the party challenging its validity. *Id.*

## DISCUSSION

In three issues, Appellants argue: (1) the trial court erred in granting the Commission's traditional motion for summary judgment and in denying Appellants' cross-motion for summary judgment because: (2) the Commission is part of the legislative branch of government; (3) and Sections 571.061,[30] 571.172[31] and 571.173[32] of the Texas Government Code violate the separation

---

[30] Section 571.061 of the Texas Government Code provides:

    (a) The commission shall administer and enforce:

        (1) Chapters 302, 303, 305, 572, and 2004;

        (2) Subchapter C, Chapter 159, Local Government Code, in connection with a county judicial officer, as defined by Section 159.051, Local Government Code, who elects to file a financial statement with the commission;

        (3) Title 15, Election Code; and

        (4) Sections 2152.064 and 2155.003.

    (b) The commission shall perform any other powers or duties given to the commission under a law listed in Subsection (a).

[31] *See* TEX.GOV'T CODE ANN. §571.172 ("The commission may: (1) issue and enforce a cease and desist order to stop a violation; and (2) issue an affirmative order to require compliance with the laws administered and enforced by the commission.")

[32] *See* TEX.GOV'T CODE ANN. §571.173 ("The commission may impose a civil penalty of not more than $5,000 or triple the amount at issue under a law administered and enforced by the commission, whichever amount is more, for a delay in complying with a commission order or for a violation of a law administered and enforced by the commission.")

of powers doctrine because these provisions assign "executive powers to legislative appointees."

## A.      The Separation of Powers Clause

The Separation of Powers Clause contained within the Texas Constitution provides:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, *except in the instances herein expressly permitted.*

TEX.CONST. art. II, § 1 (emphasis added). The last clause, known as the "exception clause" recognizes that there may exist within the Constitution itself exceptions to the general rule that the powers assigned to each branch of government must be kept separate. The Texas Supreme Court has instructed, however, that "[e]xceptions to the constitutionally mandated separation of powers are never to be implied in the least; they must be 'expressly permitted' by the Constitution itself." *Fin. Comm'n of Texas v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013) (citation omitted). Moreover, the Texas Supreme Court described the principle behind the separation of powers clause as follows:

> The separation of the powers of government into three distinct, rival branches—legislative, executive, and judicial—is the absolutely central guarantee of a just Government. Checks and balances among the branches protect the individual. It is the separation of powers, for example, that establishes bills of rights as rules of law rather than merely hollow words, which is all they are in most countries where power is vested in a few. As James Madison famously declared in Federalist No. 47: "No political truth is certainly of greater intrinsic value, or is stamped with the authority of more enlightened patrons of liberty, than [this]: The accumulation of all powers, legislative, executive, and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny."

*Norwood*, 418 S.W.3d at 569-70 (internal quotation marks and footnotes omitted).

"In determining whether or not the exercise of a power by one branch of government is an

unauthorized invasion of the realm or jurisdiction of another branch, we must consider the relationship of the various governmental departments as set forth and defined in the Texas Constitution, for that which is permitted by the Constitution cannot be unconstitutional." *Govt. Services Ins. Underwriters v. Jones*, 368 S.W.2d 560, 563 (Tex. 1963).

The Texas Constitution defines the "Executive Department" as comprised of the "Governor, . . . a Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Commissioner of the General Land Office, and Attorney General." TEX.CONST. art. IV § 1. The Legislative Department is defined as a Senate and House of Representatives. TEX.CONST. art. III §1.

**B.      The Commission's genesis is located within Article III of the Texas Constitution.**

The Texas Constitution describes the Commission as a "state agency" consisting of eight members chosen by the Governor, Lieutenant Governor and the Speaker from a list of potential appointees created by the Legislature. Specifically, the Constitution provides in relevant part:

Sec. 24a. (a) The Texas Ethics Commission is a state agency consisting of the following eight members:

(1) two members of different political parties appointed by the governor from a list of at least 10 names submitted by the members of the house of representatives from each political party required by law to hold a primary;

(2) two members of different political parties appointed by the governor from a list of at least 10 names submitted by the members of the senate from each political party required by law to hold a primary;

(3) two members of different political parties appointed by the speaker of the house of representatives from a list of at least 10 names submitted by the members of the house from each political party required by law to hold a primary; and

(4) two members of different political parties appointed by the lieutenant governor from a list of at least 10 names submitted by the members of the senate from each political party required by law to hold a primary.

18

(b) The governor may reject all names on any list submitted under Subsection (a)(1) or (2) of this section and require a new list to be submitted. The members of the commission shall elect annually the chairman of the commission.

(c) With the exception of the initial appointees, commission members serve for four-year terms. Each appointing official will make one initial appointment for a two-year term and one initial appointment for a four-year term. A vacancy on the commission shall be filled for the unexpired portion of the term in the same manner as the original appointment. A member who has served for one term and any part of a second term is not eligible for reappointment.

(d) The commission has the powers and duties provided by law.

(e) The commission may recommend the salary of the members of the legislature and may recommend that the salary of the speaker of the house of representatives and the lieutenant governor be set at an amount higher than that of other members. The commission shall set the per diem of members of the legislature and the lieutenant governor, and the per diem shall reflect reasonable estimates of costs and may be raised or lowered biennially as necessary to pay those costs, but the per diem may not exceed during a calendar year the amount allowed as of January 1 of that year for federal income tax purposes as a deduction for living expenses incurred in a legislative day by a state legislator in connection with the legislator's business as a legislator, disregarding any exception in federal law for legislators residing near the Capitol.

(f) At each general election for state and county officers following a proposed change in salary, the voters shall approve or disapprove the salary recommended by the commission if the commission recommends a change in salary. If the voters disapprove the salary, the salary continues at the amount paid immediately before disapproval until another amount is recommended by the commission and approved by the voters. If the voters approve the salary, the approved salary takes effect January 1 of the next odd-numbered year.

TEX.CONST. art. III, § 24a. Thus, with respect to the Commission's powers and duties, section 24a delegates to the Legislature the authority to assign "powers and duties provided by law" and also expressly grants to the Commission the power to recommend the salary of members of the legislature and to set their per diem.[33]

---

[33] We do not interpret Appellants' arguments to challenge the constitutionality of the *scope* of the "duties and powers" delegated to the Commission by the Legislature. Indeed, Appellants concede that the Commission's enforcement powers are constitutional so long as the Commission is an executive body. We therefore do not fully address the argument advanced by the Commission that the Commission's enforcement powers found in the Texas Government Code are constitutional because they are allegedly "expressly" granted by Article III, Section 24a (d) of the Texas

## C.     Analysis

In their second issue, Appellants argue the Commission is a legislative body. Because this issue is dispositive, we start our analysis there. Appellants' contention that the Commission is a legislative body emanates from three uncontested facts: (1) the Commission's enabling provisions were placed in Article III of the Texas Constitution, which is titled the "Legislative Department"; (2) the Commission's appointment procedure permits the Speaker, the highest ranking member of the Texas House of Representatives, to appoint two of the eight members to the Commission; and (3) the Governor and Lieutenant Governor, who are both members of the Executive branch, must choose from a list of names compiled by members of the Legislature. We consider whether these facts individually or in combination establishes as a matter of law that the Commission is a legislative body to which executive powers may not be assigned by the Legislature.

### 1.  Does placing the Commission's enabling provision within Article III render the Commission a legislative body as a matter of law?

Appellants argue that the text and structure of the Texas Constitution "makes clear" that the Commission is a legislative body because its genesis is found within Article III of the Constitution which is titled "the Legislative Department." Appellants cite no binding authority for the proposition that a state agency's placement within the Constitution conclusively establishes the nature of that agency. Instead, they rely largely on the Commission's alleged "admission" made in the trial court in which the Commission, by and through the Attorney General, argued the

---

Constitution. The Commission's contention is far from obvious. While Article III, Section 24a (d) creates the legislative authority to codify the Commission's duties and powers, except for the duty to set the legislative per diem and recommend to voters the legislative salaries, the Constitution does not *expressly* delineate any other duties and powers. *See* TEX.CONST. art. III, §24a (d) ("The commission has the powers and duties provided by law."). Consequently, any duties and powers assigned to the Commission by the Legislature pursuant to Article III, Section 24a(d) are subject to the same constitutional limits applicable to any other law enacted by the Legislature. *See Jones*, 368 S.W.2d at 563 ("The power and authority of a state legislature is plenary and its extent is limited only by the express or implied restrictions thereon contained in or necessarily arising from the Constitution itself.").

20

Commission was a legislative agency.[34, 35]

The Commission has not renewed that assertion here. Instead, the Commission now argues in defense of the trial court's determination that the Commission is an executive agency with additional legislative powers constitutionally granted. Here, in response to Appellants' argument, the Commission argues that placement of the Commission's enabling provision in Article III is not dispositive because the Commission "could have been created under Article IV" and Article III contains examples of other state agencies created by amendments to the Constitution that are considered executive agencies, including the Texas Water Development Board[36] and the Texas Veterans' Land Board.[37]

We turn first to the Commission's argument that other state agencies, such as the Texas Water Development Board and the Texas Veterans' Land Board are also found within Article III and that they are indisputably "executive" bodies. We are not persuaded by the Commission's argument in this regard in part because the argument is not fully briefed. Contrary to the

---

[34] We are not bound by a party's opinion on a question of law. Our standard of review requires that we review the trial court's legal conclusions *de novo*. Here, whether the Commission is a legislative or executive body is a legal question that does not turn on the Commission's assertion made in the trial court that it is a legislative body.

[35] Appellants also rely on federal cases in which the United States Supreme Court has found violations of the separation of powers mandate. *See, e.g.*, *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S.Ct. 2183 (2020) and *Buckley v. Valeo*, 424 U.S. 1 (1976). But Appellants' reliance on these cases is misplaced for two reasons. First, these cases are distinguishable on their facts and do not support Appellants' arguments. *See e.g., Seila Law*, 140 S.Ct. at 2197-2208 (holding federal agency created by Congress and headed by single Director who could only be removed for cause by President, instead of at will, violated constitutional separation of powers). Second, unlike the Texas Constitution, the Federal Constitution contains no express separation of powers clause. Consequently, the parameters of the separation of powers doctrine under federal law are primarily defined by Supreme Court caselaw not solely by constitutional text.

[36] *See* TEX.CONST. art. III §49-c (describing the Texas Water Development Board as "an agency of the State of Texas" and conveying "such powers as necessary under this provision together with such other duties and restrictions as may be prescribed by law").

[37] *See id.* §49-b (explaining that the Texas Veterans' Land Board "shall be composed of the Commissioner of the General Land Office and two (2) citizens of the State of Texas" one of whom "shall, with the advice and consent of the Senate, be appointed biennially by the Governor to serve for a term of four (4) years.").

Commission's bare assertion that these are "executive" bodies, the constitution does not label them as such. Rather the constitution defines the Water Development Board as a "state agency" not an "executive agency" and the Veterans' Land Board is not labeled at all. Moreover, the Commission does not discuss the specific powers and duties delegated to these agencies by the Legislature. Consequently, whether the Legislature delegated to these agencies enforcement powers similar to those delegated to the Commission is not discussed. A cursory look at the Texas Water Code, however, indicates at least with respect to the Water Development Board, the Legislature has not. *See* TEX.WATER CODE ANN. § 6.1555 ("[A]s the result of a complaint filed with the board or on the board's own motion, [the board] may refer an applicant for or recipient of financial assistance from the board to the commission, the state auditor's office, the Texas Rangers, or another state agency, office, or division, as appropriate, for the investigation of, or the initiation of an enforcement action against, the applicant or recipient."). Accordingly, we reject this argument.

In support of its second argument that placement of a state agency within a particular article in the Constitution is not dispositive, the Commission relies on *Brady v. Brooks*, 89 S.W. 1052 (Tex. 1905).[38] In *Brady*, the Texas Supreme Court was asked to determine whether the phrase "and perform such other duties as may be required by law" contained within Article IV § 22 of the Texas Constitution, which defines the powers and duties of the Attorney General, satisfied the

---

[38] While this appeal was pending Appellants directed us to *State v. Stephens*, No. PD-1032-20, 2021 WL 5917198 (Tex.Crim.App. Dec. 15, 2021), a recent case decided by the Texas Court of Criminal Appeals. *Stephens* struck down as violative of the Separation of Powers Clause an election code provision authorizing the Attorney General to prosecute an elected county official for a criminal offense that fell outside of the election code and that was more properly assigned to the judicial branch. *Id.* at *1-2, *5. In *Stephens*, the state relied on *Brady* and *Medrano v. State*, 421 S.W.3d 869 (Tex.App.—Dallas 2014, pet. ref'd), to defend the statutory provision at issue. *Id.* at *8 n.4. The *Stephens* Court rejected the state's arguments based on *Brady* in part because it found the facts were distinguishable. *Id.* at *7-8. *Stephens* also distinguished *Medrano*, a case the Commission relied in its briefing here, on the grounds that the issue had been inadequately briefed in *Medrano*. *Id.* at *8 n.4. Having reviewed the *Stephens* opinion, we do not believe *Stephens* is controlling precedent in the context of this case in part because this is a civil case controlled by Texas Supreme Court precedent, not the Texas Court of Criminal Appeals. Nor do we rely on *Stephens* as persuasive authority because the specific constitutional and statutory provisions at issue in *Stephens* are different from those at issue here. *Stephens* is therefore distinguishable.

exception clause in the Separation of Powers Clause. 89 S.W. at 1055-56. If so, the phrase would serve to authorize the Legislature's enactment of legislation permitting the state Attorney General to prosecute a civil tax case against a corporation—the prosecution of which was otherwise assigned by the Constitution to county and district officials acting within the Judiciary under Article V § 21 of the Texas Constitution. *Id.*

In holding that the exception clause applied, the Court observed that the power granted to the Attorney General by the Constitution in the phrase "such other duties as may be required by law," was meant to serve as a restraint on the powers of local officials acting under the authority of the Judicial branch of government:

> [W]hen the framers of the Constitution came to formulate [the powers and duties granted to the local officials], if the objection had been urged that the powers conferred [to the local officials] were too broad and would deprive the state of having suits of the greatest importance prosecuted by its Attorney General, the reply would have been that the power expressly given to the Legislature to impose upon the Attorney General duties in addition to those expressly defined was sufficient to enable that body to provide that that officer should represent the state in any class of cases where his services should be deemed requisite. So as to voters who adopted the Constitution. If the same objection had been interposed by them to the Constitution as submitted for their ratification, namely, that section 21 of article 5 gave too much authority to the officers therein named, they would in all probability have been satisfied upon that matter, by having it pointed out to them, that section 22 of article 4 authorized the Legislature to restrict the powers given by section 21, by conferring them in part upon the Attorney General.

*Id.* at 1056. When analyzing the competing constitutional provisions contained within the two separate articles, the Court stated:

> We attach no importance to the fact that the definition of the duties and powers of the Attorney General are placed in article 4, which is the article devoted to the executive department of the state government. The duties imposed upon him are both executive and judicial, that is, they are judicial in the sense, that he is to represent the state in some cases brought in the courts . . . Section 22 of article 4 might appropriately have been placed in article 5, and we think it should be construed precisely as if it had been so placed.

*Id.* Finally, when construing these constitutional provisions, the Court instructed:

23

> We must look to the reason of the provisions as deducible from the interests of the state which were sought to be guarded, and that construction ought to be adopted which will best safeguard the varied and important rights to be affected.

*Id.* *Brady* provides some support for the Commission's contention that mere placement of the duties and powers of a constitutionally created body within a particular article does not alone establish the nature or limitation of those powers and duties.

Consequently, we conclude the mere fact that section 24a is contained within Article III is insufficient standing alone to demonstrate as a matter of law that the Commission is a legislative body to which enforcement powers cannot be delegated by the Legislature.[39]

## 2. Does the Commission's appointment procedure render the Commission a legislative body?

While it is true that the procedure for selecting the eight members of the Commission diverges from the traditional executive appointment method, the constitution expressly assigns the responsibility of appointing Commissioners to both the Legislative and Executive branches. Indeed, it was this procedure the Legislature identified as a "narrow exception to the constitutional separation of powers between the legislative and executive branches," which was justified by the Commission's purpose. *See* Constitutional Amendment Analysis, House Research Organization, Tex. S.J.R. 8, 72nd R.S., 34 (1991).

Thus, with respect to selection of the Commission's members, the constitution expressly authorizes an appointment process in which both the Executive and Legislative branches have input. While this hybrid procedure necessarily restrains the Executive's appointment power to

---

[39] The Austin Court of Appeals reached the same conclusion in *Sullivan* when holding the challenged statutory provisions did not violate the Separation-of-Powers Clause. *See* 2022 WL 3972997, at *7 ("As for the placement of Section 24a in Article III of the Texas Constitution—entitled 'Legislative Department'—we conclude that such placement is not controlling." (citations and footnote omitted)).

some degree by Legislative input, and vice versa, the constitution expressly authorizes this form of restraint. Moreover, such restraint advances the principles that the Separation of Power Clause is meant to embrace because the Commission's membership is not selected through a concentration of power in one branch, but is shared by two, each providing a check on the other.

Consequently, we find the fact that the Commission's appointment process requires input from both the executive and legislative branches does not establish as a matter of law that the Commission is a legislative body to which enforcement powers cannot be delegated by the Legislature.

3. **Do the Legislative restraints on the Executive's selection of Commission members render the Commission a legislative body?**

Finally, Appellants argue that the Commission is allegedly comprised of "agents" of the Legislature and is thereby "controlled" by the Legislature because neither the Governor nor the Lieutenant Governor are entirely free to choose their own appointees but instead are required to select from a list of names compiled by members of the Legislature; and the Speaker, who is the highest ranking member of the House of Representatives, has authority to appoint two of the eight commissioners. We disagree. In light of the Executive's ability to appoint more members to the Commission than the Speaker, and because the Governor can veto the Legislature's list of nominees, and because any decision by the Commission can be appealed to the judiciary on a *de novo* review, Appellants' contention that the Commission is an agency "controlled" by the Legislature is without merit.

Having decided that none of these uncontested facts individually establish the Commission is a legislative body, they cannot do so in combination. As Appellants do not point to any other facts or evidence that would conclusively establish the Commission is a legislative body, rather than an executive body or a hybrid of both, their claim fails. Accordingly, under these

circumstances, we hold that Appellants have not conclusively established, nor have they created a fact issue about whether, sections 571.061, .172 and .173 of the Texas Government Code violate the Texas Constitution's Separation of Powers Clause.

## CONCLUSION

The trial court's judgment is affirmed.


October 12, 2022

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.